**NAGLE**

v.

**WAKEFIELD'S ADM'R et al.**

Court of Appeals of Kentucky.

Dec. 18, 1953.

Haden Owens and Ben. B. Morris, Wickliffe, Roy G. Garrison, Paducah, for appellant.

M. C. Anderson, Wickliffe, for appellees.

STANLEY, Commissioner.

The judgment cancels a deed to 185 acres of land. It rests upon pleas of mental incapacity of the grantor, undue influence exercised by the grantee, and no consideration. The grantee was awarded judgment for $1,200 for services rendered the grantor. We have an appeal and a cross-appeal.

Tom Wakefield, the grantor, was a farmer and well digger as long as his health permitted. After the death of his wife in 1934, Wakefield lived alone. He was eccentric and inebriate. Lack of cleanliness and a balanced diet and excessive use of alcoholic beverages contributed to a steady deterioration of his physical condition to such an extent that in 1947 a blood clot in his leg caused a gangrenous condition and it was amputated.

In May, 1947, Wakefield had recovered sufficiently to leave the hospital. His half-nephew, Sam Wakefield, took him to the Nagle Hotel or boarding house in Wickliffe where several other elderly people lived. Mrs. Emma Nagle, the proprietor, agreed with Sam Wakefield to care for and nurse his Uncle Tom back to health for $65 a month.

On November 6, 1947, Wakefield executed to Mrs. Nagle a deed to his land for the recited consideration of $5,300 cash. Within a month this action to cancel the deed was instituted by Sam Wakefield as next friend of Tom Wakefield. On June 28, 1948, before trial, the grantor died childless. The case was revived and Sam Wakefield and Edward Rhodes, his only heirs, and his administrator became plaintiffs.

Appellees, as plaintiffs, asked that the deed be canceled for the reasons stated. Appellant, as defendant, denied the allegations of the petition and asserted the grantor's capacity and the inequity of setting aside the deed. By way of counterclaim she prayed that should cancellation be adjudged, she recover the consideration paid with a lien on the land as security, and "for all legal, equitable, special and proper relief to which she may appear entitled in the premises."

The chancellor found against the defendant on the issue of mental capacity; also, that no money had in fact been paid for the conveyance and denied her counterclaim for the consideration. He did, however, give the defendant judgment for $1,200 for extraordinary services rendered the deceased.

Numerous witnesses related facts of the grantor's general conduct, his conversations and certain acts and incidents during the course of about 15 years before he died. In later years he seems to have been almost continually under the influence of intoxicants. Upon these facts they based their opinions that on the day he executed the deed, Wakefield did not have mental capacity to understand the transaction and its consequences. The lay testimony is supported by that of three doctors who had treated or had seen Wakefield in the last three years of his life. All of them agreed that he was mentally unsound before and when he executed the deed and could not have understood the nature of the transaction.

Defendant's evidence was of the same character but much less persuasive.

The burden of proving the incapacity of a grantor or the undue influence of the grantee rests upon the party relying thereon, although the burden of going forward with the proof may shift upon evidence of the existence of a confidential relation between the parties, such as where

the grantee is custodian and nurse of the grantor. Petrey's Adm'r v. Petrey, 262 Ky. 222, 90 S.W.2d 4; Layne v. Layne, 277 Ky. 295, 126 S.W.2d 416. We need not here decide the point of confidential relationship in this regard, for whether it was or not on the plaintiffs, we are of the opinion that their proof is ample to sustain the judgment.

The witnesses were heard orally. A chancellor's finding of fact on conflicting evidence will not be disturbed where no more than a doubt of its correctness exists. Hall v. Gayheart, 314 Ky. 432, 235 S.W.2d 1020; Stanifer v. Stanifer, Ky., 242 S.W.2d 981; Ewald Distributing Co. v. Hoffman, Ky., 256 S.W.2d 522. We have scarcely any doubt here. We bear in mind that greater mental capacity is required to make a conveyance than to make a will unless the conveyance is a gift or is testimentary in character. Gay v. Gay, 308 Ky. 545, 215 S.W.2d 96.

We consider the issue as to the payment of a consideration. The deposition of Mrs. Nagle, the grantee, was taken as on cross-examination. She relates circumstances showing the old gentleman urged her to buy his property and that the transaction was entirely legitimate. She testified the money came from her brother, E. B. Sullivan, a resident of Little Rock, Arkansas. He brought $5,300 in cash to Wickliffe and turned it over to her in her home and she gave him her note to evidence the loan. The brother did not testify and no such note was produced. Mrs. Nagle's mere statement of payment is without support, and does not have the virtue of verisimilitude. Even the competency of that testimony is questionable. The deed had been prepared by Mrs. Nagle's lawyer, but she says it was on Wakefield's request. He did so reluctantly, he testifies. Other lawyers had declined to prepare it. A. E. Buchanan, county court clerk, was called to the Nagle house and Mrs. Nagle handed him the deed with the remark, "Here is that deed I wanted you to acknowledge." The clerk did not see Wakefield sign it but took his acknowledgement and returned the instrument to Mrs. Nagle. The defendant indicated in her deposition that although both the county clerk and her brother were present in her home at the time, she did not give Wakefield the money in the presence of either of them. The particular evidence, considered with the overall circumstances, including the fact it was not satisfactorily shown that the old gentleman had any such sum of money in his possession thereafter, and the unconvincing evidence of a disposition of any substantial sum, fully supports the finding of the chancellor that the recited consideration was not in fact paid.

We come to the question raised on the cross-appeal, namely, whether the defendant was properly allowed $1,200 for extraordinary services she may have rendered the grantor. Nothing had been said in making the agreement for his board and care concerning extra compensation for such character of service. Nor was any such agreement, express or implied, pleaded. There was no allegation of extraordinary services and no claim made therefor in the proof. The counterclaim is directed toward the contingent recovery of the consideration which the defendant claimed she had paid for the conveyance.

Doubtless, the award is "rough justice," for we may suppose the chancellor knew the parties and the situation pretty well. But he went outside the record in doing such justice. It is true the prayer of the answer and counterclaim, after specifically asking the dismissal of the petition, recovery of costs, and contingent recovery of the purchase price allegedly paid with a lien for security, concludes with a general prayer. The relief prayed for, or even that to which the plaintiff may be entitled, is no part of his cause of action. The facts alleged and not the form of the prayer for judgment determine the nature of the relief to be granted. Relief not conformable to the case made by the pleading cannot be

granted under the prayer for general relief. Waggener v. Howsley's Adm'r, 164 Ky. 113, 175 S.W. 4; Asher v. G. F. Stearns Land & Lumber Co., 241 Ky. 292, 43 S.W.2d 1012. Under a general prayer of this character, a judgment should grant whatever relief a party may be entitled to, provided, however, that it must have at least some discernible relationship to the controversies in issue or be consonant with what is specifically pleaded and proved. Tabor v. Tabor, 213 Ky. 312, 280 S.W. 134; Perkins v. Hardwick, 275 Ky. 182, 121 S.W.2d 20; Jameson v. Jameson, 280 Ky. 554, 133 S.W.2d 923; Cawood v. Cawood's Adm'x, 285 Ky. 201, 147 S.W. 2d 88. The judgment for $1,200 was not within the scope of the pleadings, or indeed the proof, and was erroneously granted.

The judgment is affrmed on the direct appeal and reversed on the cross-appeal.